## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MARCY JACKSON VERNON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-1482-BF (P) |
| | § | |
| LINDA ROLLINS-THREATS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge.  Defendant Linda Rollins-Threats's ("Defendant") Motion for Summary Judgment, and supporting brief, filed April 14, 2005; Plaintiff Marcy Jackson Vernon's ("Plaintiff") Response to Defendant's Motion for Summary Judgment, and supporting brief, filed September 1, 2005; and Defendant's Reply Brief, filed September 22, 2005, are before the Court for consideration.

This Court previously granted Plaintiff's motion for new trial and vacated a memorandum opinion and judgment that were previously entered.  The Court has considered *de novo* the entire record and grants Defendant's motion for summary judgment for the reasons that follow.

## Background

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Health Insurance Portability and Accountability Act ("HIPPA"), found at Social Security Act § 1173, as amended 42 U.S.C. § 1320d-2.  She claims Defendant violated her rights to due process and to the privacy of her health records under color of state law.  (Compl. at 1.)  She also brings pendant state law claims of malpractice, negligence, gross negligence, breach of contract, breach of fiduciary duty, fraud, and violations of the Texas Deceptive Trade Practices Act, V.T.C.A., BUS. & C. §

17.46(b).

This case arises from a 1999 divorce and child custody proceeding between Plaintiff and her former husband, Perry Jackson ("Perry").  Plaintiff requested that the state court order a psychological examination of Plaintiff, Perry, and their two children. (Pl.'s App. 3A.)  Pursuant to Plaintiff's request and her written agreement, the 330th District Court ordered Defendant to conduct psychological evaluations of Plaintiff, Perry, and the couple's two children and to provide a recommendation to the court about the custody and living arrangements for Plaintiff and Perry's minor children.  (Pl.'s App. 3B, 3C.)  Plaintiff was represented by an attorney, Bob O'Donnell.  (Def.'s App. 5.)  Defendant, who is a licensed social worker, marriage and family therapist, and Advanced Clinical Practitioner, was subpoenaed to testify at trial.  ( Def.'s App. 4, RR, Vol. 3 at 125.)[1]   Defendant was not licensed by the State of Texas as a psychologist.[2]  (*Id*. at 125-36, Ex. 44.)  Plaintiff's counsel conducted a voir dire examination of Defendant to determine whether she qualified to testify as a mental health expert witness.  (*Id*. at 128-29.)  Plaintiff did not attempt to exclude Plaintiff as unqualified, nor did she ever object to the admission of Defendant's Psychological Report ("Report").  (Def.'s App. 4, RR, Vol. 3 at 120.)  Further, Defendant did not seek a court order to protect the privacy of the Report.

Defendant testified based upon the psychological evaluations and Report.  (*Id*. at 130-190.)  Plaintiff never objected to or attempted to strike Defendant's testimony.  Further, Plaintiff did not offer any expert testimony that Defendant's psychological evaluation was done

---

[1]  The transcript of the divorce proceeding is referred to as "RR" with the corresponding volume and page.

[2]  Defendant's resume revealed that she was not a licensed psychologist.

improperly, nor did she at any time object to the fact that Defendant was not licensed by the State of Texas as a psychologist.  The Court in the Divorce Decree awarded joint managing conservatorship of the children to Plaintiff and Perry.  (Def.'s App. 7 at 2.)

Plaintiff filed a Motion for New Trial, claiming that substantial evidence did not support the joint conservatorship award.  (*Id*. at 8.)  Plaintiff did not mention Defendant in the motion. When the trial court overruled the new trial motion, Plaintiff appealed to the Fifth District Court of Appeals of Texas.  (Def.'s App. at 9.)  The issues on appeal did not involve Defendant.  (*Id.*) Plaintiff's appeal was denied, and the Court of Appeals issued an appellate opinion stating that the 330th District Court did  not abuse its discretion in awarding joint managing conservatorship to Plaintiff and Perry.  (*Id.* at 11.)  Plaintiff did not seek further review of the custody decision.

Plaintiff explains her case as follows:

> Plaintiff's claims are to request and prove the fraud on the [state court] and the Plaintiff by [Defendant].  The Plaintiff litigated and complied with all orders of the [state court] concerning all Family Law matters.  This case deals with the fact that the Defendant, acting through a Court Order appointing her to perform a "Psychological" evaluation in the [child custody] case, did a psychological Report when the Defendant was not and has never been a psychologist through education, training, and/or licensure in the State of Texas, or in any other State (Appendix Tab 3D-1, 3D-2, 3E-2).  The Defendant, acting through the Court Order committed a fraud on the [state court] and on the Plaintiff.  The only way this fraud by the Defendant was committed on the Plaintiff was through the Defendant being a willful participant to the fraud by writing a report that was a psychological evaluation of the Plaintiff through Court Order violating the Civil Right (Appendix Tab 4-41).  The action of the Defendant [was] to commit the fraud of accepting an appointment to conduct and perform a psychological evaluation of the Defendant.  The willful action of the Defendant against the Plaintiff could not have occurred except as a joint action with the State.  The State, the Plaintiff admits, was defrauded by the hiding of the fact that the Defendant was not and has never been a Psychologist.  However, the Plaintiff would never have been defrauded it the State had not appointed the Defendant as a Psychologist.  The facts of the case are that no one found out about the fraudulent conduct of the Defendant until after the Family Law Court lost authority and jurisdiction to sanction the Defendant for the fraudulent

activity.  The Plaintiff filed a malpractice case originally against the Defendant in
State Court and then brought this the § 1983 claims and HIPPA and the other
Federal Claims.  The Plaintiff, because of an Order appointing an individual who
knew of her ineligibility to be appointed as a Psychologist to the Family Law
Case, obtained privileged and secret information on the health and mental records
of the Plaintiff.  Through fraud and deceit and only by the Defendant's being
appointed through Court Order.  This also violated the Civil Rights of the Plaintiff
and HIPPA rights.

(Resp. at 1-2.)

Plaintiff seeks actual, exemplary, treble, and mental anguish damages and attorney fees.

(Pl.'s Compl. at 6-7)  Defendant counterclaims for her attorney fees, alleging that Plaintiff's suit

is frivolous.

Defendant seeks summary judgment on the grounds that: (1) Defendant is cloaked with

derived judicial immunity; (2) the trial court did not state that its ruling was based on

Defendant's testimony; (3) Plaintiff waived any right to complain by failing to object at trial in

the underlying divorce; and (4) the doctrines of collateral estoppel and res judicata bar Plaintiff's

recovery.

### **Standard of Review**

Summary judgment is appropriate if the pleadings and summary judgment evidence show

that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. FED. R. CIV. P. 56(c); *see Lujan v. Nat'l Wildlife Fed'n,* 497 U.S.

871, 888 (1990); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986); *Celotex Corp. v.

Catrett,* 477 U.S. 317, 323-25 (1986).  "The moving party bears the initial burden of identifying

those portions of the pleadings and discovery in the record that it believes demonstrate the

absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case."  *Lynch Prop., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th

4

Cir. 1998) (citing *Celotex,* 477 U.S. at 322-25).

The moving party may meet its initial burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325.  If the movant fails to meet its initial burden, the motion must be denied, irrespective of the non-movant's response. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  If the movant meets its burden, the non-movant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.,* 148 F.3d 427, 431 (5th Cir. 1998).  A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings that are unsupported by specific facts presented in affidavits opposing the motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Lujan,* 497 U.S. at 888; *Hightower v. Texas Hosp. Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

## Analysis

Plaintiff alleges that this Court has jurisdiction pursuant to Defendant's alleged violations of  42 U.S.C. § 1983 and HIPPA.  She claims Defendant denied her due process and the right to privacy of her medical records under color of law.  All of Defendant's acts occurred during Plaintiff's divorce and child custody case.[3]  The state court appointed Defendant as an expert witness to examine Plaintiff, her husband, and their two children, to file a report, and to provide a recommendation to the court about the custody and living arrangements for Plaintiff and Perry's minor children.

---

[3]  Plaintiff also claims that Defendant violated HIPPA by filing the same medical records that had been filed without objection in state court in Plaintiff's Appendix in support of her motion for summary judgment.

5

Plaintiff contends that she is not attacking the state court proceedings, attempting to overturn them, or seeking a new custody award. She claims that she was damaged by Defendant's obtaining privileged and secret information on her health and mental records by permitting the trial court and the parties to the divorce to believe that she was a licensed psychologist. Additionally, she claims that she was damaged by the publication of the Report in the state court proceedings and its republication in this case. It is undisputed that Plaintiff was not licensed by the State of Texas as a psychologist when she examined Plaintiff pursuant to the state court order. Taking the facts most favorably to Plaintiff, the Court assumes without deciding that Defendant was not qualified to conduct psychological evaluations and give a report and recommendation to the divorce court about child custody.

## Defendant's Defense of Derived Judicial Immunity

A litigant may not recover damages pursuant to 42 U.S.C. § 1983 from judges, prosecutors, and other persons acting "under color of law" who perform official functions in the judicial process. *See Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). Absolute immunity is necessary to preserve judicial independence. *See Imbler v. Pachtman*, 424 U.S. 409, 422-24 (1976). The doctrine assures that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation. *Butz v. Economou*, 438 U.S. 478, 512 (1978).

When judges delegate their authority or appoint others to perform services for the court, the judge's absolute judicial immunity may extend to his or her delegate or appointee. *Delcourt v. Silverman*, 919 S.W.2d 277, 781 (Tex. App – Houston March 7, 1996, reh'g denied). This is known as "derived judicial immunity." *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002). Derived judicial immunity extends only to those officials whose "judgments are

6

'functionally comparable' to those of judges" and who "'exercise a discretionary judgment' as part of their function." *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 432, 432 n. 3 (1993).

In *Delcourt*, the loser in a child-custody modification sued the court-appointed psychologist for various torts arising from her participation in the proceeding. *Delcourt*, 919 S.W.2d at 782-83. The psychologist asserted the defense of derived judicial immunity. *Id*. The trial court granted the psychologist's motion for summary judgment, and the appeals court affirmed the decision. *Id*. The appellate court found that mental-health professionals who are appointed by the trial court to examine the child and parents in a custody proceeding are acting as a factfinder for the trial court. *Id*. It explained that "[the] court relies on the professional to provide information essential to the decision-making process. Without the protection of absolute immunity, such professionals would be, at the very least, reluctant to accept these appointments. This would in turn inhibit judges from performing their duties." *Id*. It concluded that the psychologist acted as a "functionary" of the court. *Id*.

Courts in other jurisdictions have granted derived judicial immunity to persons performing duties similar to those that Defendant performed in this case.[4] A decision of the

---

[4] *See*, e.g., *Myers v. Morris*, 810 F.2d 1437, 1466 (8th Cir. 1987), *abrogated on other grounds, Burns v. Reed,* 500 U.S. 478, 496 (1991) (court appointed social worker/therapist who was not a licensed "physician, psychiatrist, or psychologist" who provided therapy and an examination of a minor child in child sexual abuse case); *Moses v. Parwatikar,* 813 F.2d 891, 892 (8th Cir. 1987) (court-appointed physician who evaluated a person's mental condition); *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970) (same); *Bartlett v. Weimer*, 268 F.2d 860, 862 (7th Cir. 1959) (same); *Parker v. Dodgion,* 971 P.2d 496, 499 (Utah 1998) (psychologist appointed as evaluator in custody dispute entitled to immunity from suit); *Duff v. Lewis,* 958 P.2d 82, 86-87 (Nev. 1998) (psychiatrist appointed to perform child assessments in custody dispute performed "integral function in assisting courts" entitling him to absolute quasi-judicial immunity); *Lavit v. Superior Court,* 839 P.2d 1141, 1144-45 (Ariz. Ct. App. 1992) (psychologist who performed child-custody evaluation exercised judicial function requiring absolute immunity); *Howard v. Drapkin,* 271 Cal.Rptr. 893, 902 ( Cal. Ct. App. 1990) (psychologist who

7

Supreme Court of Alaska is illustrative because, like the Plaintiff in this case, the litigant

claimed a psychologist who testified in a child custody action did not meet the state's minimum

professional standards for psychologists.  *See Lythgoe v. Guinn*, 884 P.2d 1085, 1086 (Alaska

1994).  The loser in a custody dispute sued a court-appointed psychologist for, *inter alia,*

negligent investigation, misrepresentation, and failure to perform to the state's minimum

professional standards for psychologists.  *Id*.  The trial court granted the psychologist's motion

to dismiss for failure to state a claim upon which relief may be granted, finding that the

psychologist's actions were within the scope of derived judicial immunity.  *Id.*  The Supreme

Court of Alaska affirmed the trial court's decision, holding that the psychologist "served as an

'arm of the court' and performed a function 'integral to the judicial process.'"  *Id.* at 1088

(quoting *Seibel,* 631 P.2d at 179).

 An important aspect of derived judicial immunity is the fact that the adversarial process

includes the rights to depose a court-appointed mental health expert and to challenge the expert's

qualifications.  Additionally, the process includes the right of cross-examination and the

---

performed neutral evaluation in custody dispute entitled to same immunity given others who
function as neutrals in resolving disputes); *S.T.J. v. P.M.,* 556 So.2d 244, 247 (La. Ct. App.
1990) (psychologists appointed to aid in resolving custody dispute performed quasi-judicial
function entitling them to absolute immunity); *LaLonde v. Eissner,* 539 N.E.2d 538, 541-42
(Mass. 1989) (psychiatrist who performed independent evaluation in visitation dispute "entitled
to immunity because of the function he performed and its essential connection to the judicial
process"); *Williams v. Rappeport,* 699 F.Supp. 501, 508 (D. Md. 1988) (court-appointed
psychologist and psychiatrist in custody action); *Doe v. Hennepin County,* 623 F. Supp. 982, 986
(D. Minn. 1985) (psychologist selected by parents to assist court in visitation action); *Seibel v.
Kemble,* 631 P.2d 173, 177 (Haw. 1981) (psychiatrists who rendered opinion regarding
defendant's mental condition functioned as "arm of court" entitling them to absolute judicial
immunity);  *Linder v. Foster*, 295 N.W. 299, 301 (Minn. 1940) (court-appointed physicians and
surgeons evaluating a person's mental condition).

opportunity "to bring to the judge's attention any alleged deficiencies in the evaluation." *Lythgoe,* 884 P.2d at 1091. Moreover, "the complaining party is 'free to seek appellate review or ... request a modification of the [trial court's] order.'" *Id.* (quoting *LaLonde v. Eissner*, 539 N.E.2d at 542). Finally, the court is able to insure that expert witnesses will be accountable for their conduct and actions by the imposition of sanctions. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

In this case, Plaintiff claims that Defendant is not protected by derived judicial immunity because her actions in not being a licensed, competent, qualified Psychologist mean that she acted beyond the scope of her appointment by the state court and defrauded it.[5] Plaintiff's arguments are without merit. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978). Judicial immunity (and hence, derived judicial immunity) applies however erroneous the act and however evil the motive. *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989) (citing *Stump*, 435 U.S. at 356-57; *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *Holloway v. Walker*, 765 F.2d 517, 522-25 (5th Cir. 1985); *Adams v. McIlhany*,

---

[5] Plaintiff relies upon dicta in *Daniels v. Stovall*, 660 F. Supp. 301, 303 (S.D. Tex 1987), comparing herself to the litigant who was deprived of her liberty for two weeks pursuant to a mental health commitment order. The District Court in *Stovall* hypothesized that the judge would not have been entitled to direct judicial immunity because he acted outside his legal authority by allowing the clerk to use his rubber stamped signature on the commitment order outside his presence. Court functionaries such as clerks are not entitled to judicial immunity because their duties are ministerial, not discretionary, in nature. *Barnes v. Dorsey*, 480 F.2d 1057, 1060 (8th Cir. 1973). *Stovall* is not dispositive or even instructive here. In the only other case Plaintiff relies on, the complaint was dismissed as frivolous for failure to state any factual basis to support a conspiracy charge between a judge and private parties. *See Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). Plaintiff's reliance upon *Hale* is inapposite.

764 F.2d 294, 297-99 (5th Cir. 1985)).  Nothing in the record suggests that the trial court was

without jurisdiction to appoint Defendant as an expert witness or that Defendant acted in excess

of the authority conveyed to her by the order of appointment which Plaintiff approved.

Plaintiff  also claims that she did not learn of Defendant's lack of qualifications until

after the appeal was decided.  Plaintiff includes letters from the licensing agency showing that

Defendant was not licensed.  She provides no explanation for why such letters could not have

been obtained during the state court proceedings.

Plaintiff had access to the full procedural safeguards of the adversarial process during the

state court proceeding.  Defendant did not conceal either her credentials or any lack of

credentials.  Before trial, Plaintiff neither deposed Defendant nor challenged her qualifications.

At trial, Plaintiff's counsel examined Defendant regarding her qualifications and failed to lodge

an objection.  Defendant submitted her resume which was introduced into evidence without

objection.  Similarly, Defendant's Report was admitted without objection.  Plaintiff did not seek

to protect her privacy by requesting a protective order for the Report.  In her motion for new trial

and on appeal, Plaintiff did not contest Defendant's actions.

Defendant performed a function integral to the judicial process because, at least to some

extent, her evaluations and recommendations aided the trial court in determining child custody.

Her services were performed pursuant to a court order, making her "an arm of the court."

Defendant is entitled to absolute derived judicial immunity from suit on all of Plaintiff's claims.[6]

With respect to Plaintiff's HIPPA claims, Congress did not mandate that health care

_____

[6] Defendant is immune from suit on any claim that arose from her services as a court-appointed mental health expert.  Accordingly, the Court need not address Defendant's other grounds in support of summary judgment.

providers comply with HIPPA's privacy regulations until April 14, 2003.  *See* 45 C.F.R. §

164.534.  Defendant's Report is dated June 23, 2000, and was introduced into evidence during

the trial which commenced on March 8, 2002, before compliance with HIPPA was required.

Moreover, the regulations provide that health care providers may disclose protected health

information without patient consent in response to a court order, provided that only the

information specified in the court order is disclosed.  45 C.F.R. § 164.512(e).  In this case, the

trial court ordered the psychological evaluation, and Plaintiff indicated her written agreement

with his order. (Def.'s App. 2.)  When Defendant published the Report in this case in defense of

Plaintiff's complaint, it was already a public record.  Further, Plaintiff waived any privacy rights

in the Report by not seeking a protective order for the Report in the custody case.  In this case,

Plaintiff requested that the copy of the Report she provided be placed under seal, however, she

further waived any privacy rights by not seeking a protective order for the copy of the Report in

Defendant's Appendix.  In sum, Plaintiff fails to state a claim for a HIPPA violation.

## Conclusion

Defendant is entitled to derived judicial immunity from suit on all of Plaintiff's claims.

Additionally, Plaintiff does not state a claim for violation of HIPPA.  Further, Plaintiff's

complaint is frivolous in light of the settled law that court-appointed mental health experts who

perform a function integral to the judicial process and act as an arm of the court are entitled to

derived judicial immunity from suit.  Additionally, Plaintiff's HIPPA claims are frivolous

because she sued for violations of regulations that were not in effect at the time of the alleged

violation and had waived any privacy rights in the Report before this action was filed.  The Court

grants Defendant's Motion for Summary Judgment, Defendant's counterclaim, and Defendant's

request for attorney fees and costs.[7]

       Signed November 2, 2005.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

    [7] The amount of the attorney fees will be determined by separate order based upon the pleadings previously submitted.